Howard Estates Development Company, Plaintiff, *v.* Metropolitan Trust Company of the City of New York, as Trustee, etc., Defendant.

First Department, February 21, 1924.

Corporations — real estate corporation — bonds — rights of bondholders under agreement authorizing exchange of bonds for building lots at twenty-five per cent less than sale price — accrued interest on bonds is to be considered in determining conversion value — bondholder must pay full price for lots above amount of conversion value of bonds.

Under an agreement between the bondholders of a real estate corporation and the corporation and the trustee under a trust mortgage which gives each bond-holder the right to purchase building lots at a discount of twenty-five per cent from the sale price and to surrender bonds at the face value thereof, " with accrued unpaid interest at 6% added thereto, in payment of such part of the purchase price of such lot or lots as is represented by the face amount of such bond or bonds," and which denies the right to exchange coupons unaccom-

panied by bonds, a bondholder has the right to purchase lots at the discount provided for in the agreement and pay for the same with his bonds at their face value plus the accrued interest.

A bondholder who selects lots of a greater value than the conversion value of his bonds plus the accrued interest must pay the full sale price of the lots selected over and above the conversion value of the bonds with interest.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Myer Nussbaum,* for the plaintiff.

*Carter, Ledyard & Milburn* [*Heber Smith* of counsel], for the defendant.

SMITH, J.:

The plaintiff is a real estate development company. The defendant is a trustee under a certain mortgage securing a series of bonds. William C. Handlan is the owner of $24,000 face value of those bonds. The plaintiff was not able to pay the interest on these bonds, and a bondholders' committee was appointed by consent, who negotiated a contract with the plaintiff and the defendant by which foreclosure proceedings would be obviated. Under that agreement a certain small amount of interest was to be paid to the bondholders and certain payments made on the principal of the bonds. Handlan received one-half of one per cent interest on his bonds, which were six per cent bonds, and he received $1,200 on the principal of his bonds.

The agreement above referred to, entered into between the plaintiff and the defendant through the bondholders' committee, provided, among other clauses, the following:

"*Fourth.* Any bondholder shall have the right at any time to purchase lots from the Company which are then being offered for sale by the Company to the public at a discount of 25% from the regularly established price list at which the said lots are offered to the general public at the time, but in no case at a price or prices less than 75% of the prices appearing on such price list in force and delivered to the Trustee by the Company at the time of the execution of this instrument; and to surrender any of his said bonds at the face value thereof, with accrued unpaid interest at 6% added thereto, in payment of such part of the purchase price of such lot or lots as is represented by the face amount of such bond or bonds. Such right to exchange bonds for lots shall not, however, include the right to exchange coupons, or the acknowledgments of indebtedness exchanged therefor, unaccompanied by the bonds or to have a credit for interest unaccompanied by the bonds."

In pursuance of this clause William C. Handlan notified the parties that he selected certain lots which had a selling price of

$41,590, and that he desired to purchase the same by surrender of the bonds held by him, namely, $22,800 face value, plus interest at five and one-half per cent, $6,897; making a total of $29,697. The selling price of the lots, reduced by the twenty-five per cent provided for in the above paragraph 4, left a balance of $31,192.50, upon which Handlan claimed he was entitled to a credit of $29,697, leaving a balance due of $1,495.50.

There are two questions involved in this submission. The first, whether in the payment for these lots by bonds, the bondholder was entitled to credit for the interest on the bonds in addition to the face value, or the amount of the principal only of the bonds. The second question is whether the bondholder, in purchasing lots under this agreement and presenting bonds for a part of the purchase price only, is entitled to the twenty-five per cent discount in payment of cash for the balance of the purchase price.

A careful reading of paragraph 4 convinces us that it was the intent of all the parties that the bondholder should be entitled to purchase lots and pay for the same with his bonds, plus interest. The agreement positively states that he is entitled to surrender any of his bonds at the face value thereof " with accrued unpaid interest at 6% added thereto." This seems to be a very clear positive statement. The last sentence of paragraph 4 quoted above seems to corroborate this in a negative way, said sentence being to the effect that the coupons accompanying bonds should have a credit value in exchange for lots purchased. We, therefore, hold that the bondholder is entitled to credit for the unpaid face of his bond, plus the unpaid interest.

As to the second proposition, there is, perhaps, more doubt. The first part of the paragraph would seem to indicate that the holder of a bond, however small it might be, could purchase lots of whatsoever list price and have the benefit of the twenty-five per cent discount upon the balance of the purchase price. That first clause in the paragraph is connected with the second clause and should in equity be read with that clause. As we read the agreement, Exhibit C, in addition to these bondholders who were to be protected by the agreement, there are apparently stockholders represented here by the plaintiff. If the agreement is to be interpreted as the trustee claims, any one bondholder might very easily deprive the stockholders of a large part of the value of their stock. The last sentence of paragraph 4 gives additional support to this view. The bondholders' right under this paragraph is " to *exchange* bonds for lots." As this paragraph is to be considered as a whole, the first clause must be interpreted as giving a bondholder the right to the twenty-five per cent deduction only to the extent of his

holding of bonds. The effect of the paragraph 4 giving the bond-holder a right to purchase lots at a twenty-five per cent discount and pay for the same with bonds was to give to the bonds an enhanced value of thirty-three and one-third per cent. As we read paragraph 4, taking it altogether, a bondholder, having a bond of the value of $1,000, might select any number of lots he desires to select at the list price and be entitled to credit thereon for the face value of his bond, plus interest, enhanced in value by one-third thereof, or thirty-three and one-third per cent, and must pay the balance of the proposed list purchase price in cash. Taking the claim of Mr. Handlan for the purchase of certain specified lots of a list value of $41,590, we find that he would be entitled to credit thereon for $29,697, as of January 1, 1923, plus thirty-three and one-third per cent thereof, or $39,596, which would leave due from Mr. Handlan on the purchase of the lots selected $1,994. Mr. Handlan cannot make his cash payments at the reduced value of twenty-five per cent.

We hold, therefore, that a bondholder is entitled to select such lots as he may desire to purchase at the list selling price, and pay for the same with his bond or bonds, plus interest, plus thirty-three and one-third per cent, and the balance thereof in cash. This disposes of both points in this controversy, and results in a judgment for the plaintiff to this extent. Judgment ordered accordingly.

CLARKE, P. J., MERRELL and FINCH, JJ., concur; MARTIN, J., concurs in result.

Judgment directed for plaintiff in accordance with opinion. Settle order on notice.